IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ANDRE HILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-583-ALM-KPJ |
| | § | |
| NEBRASKA FURNITURE MART or | § | |
| TXFM, INC. d/b/a NEBRASKA | § | |
| FURNITURE MART, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Nebraska Furniture Mart or TXFM, Inc. d/b/a Nebraska Furniture's ("Defendant")[1] Motion to Dismiss for Lack of Subject-Matter Jurisdiction (the "Second Motion to Dismiss") (Dkt. 19), to which Plaintiff Andre Hill ("Plaintiff") filed a response (the "Response") (Dkt. 21), and Defendant filed a reply (the "Reply") (Dkt. 23). For the reasons that follow, the Court recommends that the Second Motion to Dismiss (Dkt. 19) be **GRANTED**.

## I.   BACKGROUND

**A.   Procedural History**

On June 21, 2023, Plaintiff initiated this action by filing a complaint (the "Complaint") (Dkt. 1) against Defendant, wherein Plaintiff asserts several discrimination and retaliation claims arising under the Family and Medical Leave Act (the "FMLA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and the Texas Labor Code. *See* Dkt. 1 at 9–

---

[1] The parties implicitly recognize that the appropriate party to this action is "TXFM, Inc.," which does business as "Nebraska Furniture Mart." *See* Dkt. 15 at 1.

12. Two days later, Plaintiff filed the First Amended Complaint (Dkt. 3) as a matter of course, which added two additional retaliation claims arising under the Texas Labor Code and § 1981. *See* Dkt. 3; *see also* FED. R. CIV. P. 15(a)(1). On September 8, 2023, Defendant filed a motion to dismiss (the "First Motion to Dismiss") (Dkts. 7–8), wherein it sought dismissal of Plaintiff's claims arising under the Texas Labor Code because "Defendant was a non-subscriber under the Texas Worker's Compensation Act," and because Plaintiff did not exhaust his administrative remedies. Dkt. 8 at 2–3. In response, Plaintiff filed the Second Amended Complaint (Dkt. 9), which dropped all claims under the Texas Labor Code and added a state law negligence claim against Defendant. *See* Dkt. 9 at 9–13. On October 10, 2023, Defendant answered the Second Amended Complaint (Dkt. 9). *See* Dkt. 10.

On October 16, 2023, the Court found that the Second Amended Complaint (Dkt. 9) "was improperly filed without the Court's leave." Dkt. 12 at 2. Nevertheless, the Court found that it was "in the interest of justice to retroactively grant leave of court for Plaintiff to file the amended pleading." *Id.* (cleaned up). The Court was persuaded by the fact that the Second Amended Complaint (Dkt. 9) provided the relief sought by Defendant in the First Motion to Dismiss (Dkts. 7–8). *Id.* The Court also noted that Defendant did not move to strike the pleading as untimely, and instead filed an answer. *Id.* Because the Second Amended Complaint (Dkt. 9) was deemed the live pleading in this matter, thereby superseding the First Amended Complaint (Dkt. 3), the Court denied the First Motion to Dismiss (Dkts. 7–8) as moot. *Id.*

On December 19, 2023, Defendant filed the Second Motion to Dismiss (Dkt. 19) seeking dismissal of one of Plaintiff's five claims. *See* Dkt. 19. According to Defendant, "[t]he Court lacks subject-matter jurisdiction over Plaintiff's negligence claim" and, thus, that "claim should be

2

dismissed." *Id.* at 1. On January 19, 2024, Plaintiff filed the Response (Dkt. 21). *See* Dkt. 21.[2] On January 26, 2024, Defendant filed the Reply (Dkt. 23). *See* Dkt. 23.[3]

**B.      Factual Allegations**

In the Second Amended Complaint (Dkt. 9), Plaintiff alleges that he began his employment with Defendant in January 2013. Dkt. 9 at 3. Over the next several years, Plaintiff received a number of promotions and was "relocated to the Dallas area when [Defendant] opened a super center in The Colony, Texas." *Id.* According to Plaintiff, "his career was solid, and his prospects were positive." *Id.* Plaintiff alleges that this "solid" trajectory changed in February 2020 when Plaintiff's "white supervisor wanted to replace him with one of the supervisor's white friends." *Id.* at 4. Thereafter, Plaintiff alleges that he received three performance agreements in a sixth-month period. *Id.* Because Plaintiff believed these performance agreements were "bogus and racially motivated," he filed an "internal complaint of racial discrimination" in July 2020. *Id.* Plaintiff was demoted two months thereafter. *Id.* A few months later, Plaintiff filed an affidavit supporting a fellow employee's claim of racial discrimination in her charge with the Equal Employment Opportunity Commission (the "EEOC") against Defendant. *Id.*

Plaintiff alleges that, in August 2021, he began "experiencing health issues while working at the . . . loading dock . . . due to the physical demand and working in outside conditions." *Id.* Specifically, Plaintiff alleges that, while he was recovering from Covid-19 complications, he "experienced what he would later be told by his physicians was a mild heart attack." *Id.* at 5. Due to this medical issue, Plaintiff experienced "shortness of breath, a fast and irregular heartbeat, and

---

[2] In most cases, "[a] party opposing a motion has fourteen days . . . from the date the motion was served in which to file a response and any supporting documents." LOC. R. CV-7(e). While the Response (Dkt. 21) was filed outside this timeframe, it is timely because the Court extended Plaintiff's response deadline *sua sponte*. *See* Dkt. 20.

[3] Initially, Defendant filed a reply which exceeded the page limit imposed by the Local Rules. *See* Dkt. 22; *see also* LOC. R. CV-7(a)(2). The Clerk of Court issued a notice of deficiency, and Defendant filed the Reply (Dkt. 23) the following day. *See* Dkt. 23.

3

muscle spasms in his back and stomach." *Id.* Thereafter, Plaintiff reported "his symptoms and condition" to Defendant's human resources department ("Human Resources"), which instructed him to file an FMLA claim. *Id.* After Plaintiff filed an FMLA claim, he was instructed to communicate with a third-party vendor (the "Third Party"), which handles Defendant's employees' FMLA claims. *Id.* According to Plaintiff, the Third Party gave him a "timeframe to provide documentation from his doctor to certify the dates needed for FMLA leave." *Id.*

At some point thereafter, Plaintiff alleges that Human Resources contacted Plaintiff regarding his return-to-work date, which had "came and went." *Id.* at 6. According to Plaintiff, he communicated that he had continuing health issues and, as a result, would provide the Third Party with the documents necessary to extend his FMLA leave. *See id.* Within a few hours of this communication, Plaintiff alleges he was terminated due to "two consecutive 'No Call No Show' policy violations." *Id.* According to Plaintiff, he "immediately communicated" with Human Resources and Defendant's management "to let them know that he was still out on covered FMLA leave and was unable to report to work on the dates in question." *Id.* However, Human Resources indicated that his termination was "final." *Id.* Plaintiff then filed charges of discrimination with the EEOC relating to his termination and, upon receiving a right to sue letter, initiated this lawsuit. *Id.* at 9. Plaintiff asserts that he was unlawfully terminated or demoted: (1) "because he filed for FMLA leave and sought to fully take advantage of the leave rights as instructed by his physician and allowed by the FMLA"; (2) "because of his race"; and (3) "in retaliation for his protected activity of filing a claim of racial discrimination and/or supporting the racial discrimination [claim] of another." *See id.* at 10–12. In addition, Plaintiff asserts a claim of negligence based on Defendant's failure to

> exercise reasonable care by failing to provide sufficient and reasonable tools for the performance of Plaintiff's job, including without limitations: a workplace

sufficiently shaded and cooled from the Texas heat in the manner reasonable for the circumstances; the tools and equipment needed to perform the lifting and other physical activities needed for Plaintiff's job duties; providing sufficient number of employees for the volume, nature, and speed of the work involved given the hot work environment; and other similar acts or omissions that were unreasonable under the circumstances.

*See id.* at 12–13.

## II.   LEGAL ANALYSIS[4]

In the Second Motion to Dismiss (Dkt. 19), Defendant argues that the Court "lacks supplemental jurisdiction" over Plaintiff's negligence claim because it "does not arise out of the same case or controversy as Plaintiff's federal claims." Dkt. 19 at 2. Specifically, Defendant contends that "Plaintiff's federal claims stem from Plaintiff's demotion and termination," while Plaintiff's negligence claim "stem[s] from a personal injury allegedly sustained while Plaintiff was in the course and scope of his employment." *Id.* In the Response (Dkt. 21), Plaintiff argues there is a "clear common nucleus of fact" because all of his claims seek lost wages "for the same period of time." *See* Dkt. 21 at 12–13. Relatedly, Plaintiff argues that, because "Defendant has asserted the failure to mitigate damages as an affirmative defense as to all of Plaintiff's causes of action," Plaintiff must introduce evidence demonstrating that "Plaintiff was illegally fired . . . and that Plaintiff took reasonable efforts to prevent that illegal firing." *Id.* at 13. The Court agrees with Defendant.

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Accordingly, a federal

---

[4] The parties analyze the "common law factors of judicial economy, convenience, fairness, and comity." *See* Dkts. 21 at 9; 23 at 3. The Court declines to do so here. These factors are only relevant when the Court has supplemental jurisdiction but uses its discretion—guided by the statutory and common law factors—to decline to exercise it. *See Garcia v. City of McAllen*, 853 F. App'x 918, 920 (5th Cir. 2021); *see also* 28 U.S.C. § 1367(c).

court "must determine whether it has proper subject matter jurisdiction over every claim." *Insuremax Ins. Agencies, Inc. v. Shanze Enters., Inc.*, No. 13-cv-1231, 2013 WL 4014476, at *1 (N.D. Tex. Aug. 7, 2013) (citing *Marshall v. Gibson's Prods., Inc. of Plano*, 584 F.2d 668, 672 (5th Cir. 1978)). It is well established that the "party invoking federal subject-matter jurisdiction has [the] burden of pleading and proving it." *Maxwell v. Kight*, 974 F. Supp. 899, 902 (E.D. Tex. 1996) (citing *Epps v. Bexar-Medina-Atascosa Cntys. Water Improvement Dist. No. 1*, 665 F.2d 594, 595 (5th Cir. 1982)). Such a party "has the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008)). "In the Fifth Circuit, subject-matter jurisdiction determinations may be made using any one of the following bases: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Maxwell*, 974 F. Supp. at 902 (citing *Barrett Comput. Servs., Inc. v. PDA, Inc.*, 884 F.2d 214, 220 (5th Cir. 1989)).

"When a district court has jurisdiction over one claim, 28 U.S.C. § 1367(a) authorizes supplemental jurisdiction over other claims so related to it 'that they form part of the same case or controversy.'" *Weaver v. Metro. Life Ins. Co.*, 939 F.3d 618, 624 (5th Cir. 2019) (quoting 28 U.S.C. § 1367(a)). A claim is a part of the same case or controversy if it is "so related to the original claims that they . . . 'derive from a common nucleus of operative fact.'" *S J Associated Pathologists, P.L.L.C. v. Cigna Healthcare of Tex., Inc.*, 964 F.3d 369, 373 (5th Cir. 2020) (omission in original) (quoting *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008)). In other words, "if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming

substantiality of the federal issues, there is power in federal courts to hear the whole." *Mumpuku v. City of Plano*, No. 18-cv-785, 2021 WL 1600286, at *3 (E.D. Tex. Apr. 22, 2021) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)) (internal quotation marks omitted).

After careful consideration, the Court finds that Plaintiff's negligence claim does not arise from the same common nucleus of operative fact as his federal claims. Each of Plaintiff's federal claims relate to his alleged wrongful termination or demotion at the hands of Defendant,[5] while Plaintiff's negligence claim is based on Defendant's alleged failure to "exercise reasonable care by failing to provide sufficient and reasonable tools for the performance of Plaintiff's job." *See* Dkt. 9 at 13. The only significant commonality between these claims is that they arise from Plaintiff's employment with Defendant. But "[t]he mere fact that the parties were once linked by an employer-employee relationship is insufficient when the claims would stir such different issues and rely on such different facts and evidence." *Cordero v. Voltaire, LLC*, No. 13-ca-253, 2013 WL 6415667, at *5 (W.D. Tex. Dec. 6, 2013) (citation omitted) (internal quotation marks omitted); *see, e.g.*, *Whatley v. Young Women's Christian Ass'n of Nw. La., Inc.*, No. 06-423, 2006 WL 1453043, at *3 (W.D. La. May 18, 2006) (finding no common nucleus of operative fact where the only relationship between plaintiff's FLSA claim and state law claims was the "employer-employee relationship").

The Court notes that there appears to be an attenuated causal relationship between Plaintiff's state and federal claims: (1) Defendant's negligence allegedly caused Plaintiff's heart

---

[5] *See* Dkt. 9 at 10 ("Defendant violated the FMLA by terminating [Plaintiff] . . . because he filed for FMLA leave . . . ."); *id.* at 10–11 (asserting Defendant violated Title VII and § 1981 by "terminating [Plaintiff] . . . because of his race"); *id.* at 11 (asserting Defendant violated Title VII and § 1981 by "terminating [Plaintiff] . . . in retaliation for his protected activity of filing a claim of racial discrimination . . . and/or supporting the racial discrimination [claim] of another"); *id.* at 12 ("Defendant . . . wrongfully demoted [Plaintiff] and violated [§] 1981 by demoting him . . . based on race and/or in retaliation for his protected activity of filing a claim of racial discrimination and/or supporting the racial discrimination [claim] of another.").

attack; (2) Plaintiff's heart attack resulted in him taking FMLA leave; and (3) Plaintiff was terminated because he took FMLA leave. *See* Dkt. 9 at 4–5, 10, 13. Notwithstanding this attenuated causal relationship, Plaintiff's state and federal claims do not share "operative facts" insofar as the facts relevant to the disposition of Plaintiff's negligence claim are "separate and distinct" from Plaintiff's federal claims. *See Salei v. Boardwalk Regency Corp.*, 913 F. Supp. 993, 999 (E.D. Mich. 1996). Specifically, the facts needed to prove that Defendant terminated Plaintiff for taking FMLA leave differ widely from those needed to prove that Defendant was negligent by failing "to provide sufficient and reasonable tools for the performance of Plaintiff's job." *See* Dkt. 9 at 10, 12–13. For these reasons, the Court lacks supplemental jurisdiction over Plaintiff's negligence claim.

Plaintiff's arguments to the contrary are unavailing. Specifically, Plaintiff contends that there is a "clear common nucleus of fact" because all of his claims seek lost wages "for the same period of time." Dkt. 21 at 12–13. Even assuming *arguendo* that this would require the submission of duplicative evidence,[6] Plaintiff points to no authority—and the Court finds none—indicating that claims are sufficiently related for the purposes of supplemental jurisdiction because they seek the same remedy. *See id.* Indeed, Plaintiff's own authority suggests the need for a greater degree of factual relatedness.

For example, in *Bennett v. Fastenal Co.*, 184 F. Supp. 3d 304 (W.D. Va. 2016), the plaintiff sued her employer alleging that her supervisor sexually harassed her and "eventually terminated her after she rejected his advances." *Id.* at 305. The plaintiff asserted Title VII claims of sex

---

[6] In the Reply (Dkt. 23), Defendant asserts that the "only common thread" between Plaintiff's federal claims and negligence claim is "the evidence necessary to support his claim for lost wages." Dkt. 23 at 3. According to Defendant, these "sweeping generalizations" fail to account for the fact that "lost wages under Plaintiff's federal claims consists of forgone wages and benefits, while Plaintiff's state negligence claim consists of compensation for diminished capacity in the workforce." *Id.* at 4. Defendant argues that these differences undermine Plaintiff's argument insofar as the damages calculations "will require different discovery and evidence to substantiate" those claims. *Id.* at 5.

discrimination and harassment, as well as state law claims of assault and battery. *Id.* The court found that it had supplemental jurisdiction over the assault and battery claims because the same underlying factual allegations (the supervisor's sexual misconduct) formed a "significant part" of both the state and federal claims. *Id.* at 308. As explained above, the allegations in the present case involve distinct occurrences without significant factual overlap.

Similarly, in *Saenz v. Austin Roofer's Supply, LLC*, 664 F.Supp.2d 704 (W.D. Tex. 2009), the plaintiffs asserted a claim under the Fair Labor Standards Act (the "FLSA") for the defendants' alleged failure to "pay them overtime wages." *Id.* at 705. The plaintiffs also asserted a state law claim for breach of contract for the defendants' alleged failure "to pay them commissions for sales of roofing supplies." *Id.* Finally, one of the plaintiffs asserted claims of assault, battery, and negligent training, retention, and supervision arising from an alleged "assault and battery . . . in the workplace." *Id.* at 705–06. As to the tort claims, the court found that the there were no "specific facts" besides the "employment relationship between the parties" connecting the "state law tort claims together with the FLSA claim." *Id.* at 708–09. Thus, the court concluded that it lacked supplemental jurisdiction over the tort claims. *Id.* at 709–10. However, the court reached the opposite conclusion with respect to the breach of contract claim because both the state and federal claims emerged from the plaintiffs' "alleged entitlement to wages and the amount [the] [d]efendants allegedly failed to pay." *Id.* at 710. In addition, the parties would have relied on "substantially the same facts" to prove (and defend against) these claims. *Id.* Unlike the breach of contract claim in *Saenz*, Plaintiff's state and federal claims arise from two distinct occurrences and, in any event, involve little to no factual overlap.

Plaintiff also argues that there is a common nucleus of operative fact because "Defendant has asserted the failure to mitigate damages as an affirmative defense as to all of Plaintiff's causes

9

of action," which will require Plaintiff to introduce evidence demonstrating that "Plaintiff was illegally fired . . . and that Plaintiff took reasonable efforts to prevent that illegal firing." Dkt. 21 at 13. This argument is without merit. The common nucleus of operative fact is created by the relatedness of the claims—not by reference to any affirmative defense raised by the opposing party. *See Mendoza*, 532 F.3d at 346 ("The question . . . is whether the supplemental claims are so related to the original claims that they form part of the same case or controversy, or in other words, that they 'derive from a common nucleus of operative fact.' Here, both the federal and state claims on the face of the pleadings concern the same core factual issue: the proper diagnosis and treatment of [the plaintiff's] bladder cancer." (internal citation omitted)); *cf. Lawrence & Assocs., Inc. v. Amdocs Champaign, Inc.*, No. 05-cv-2306, 2007 WL 390732, at *3 (E.D. Mo. Jan. 31, 2007) ("The . . . defendants argue that the counterclaims and the potential affirmative defenses share a common nucleus of operative facts. This is irrelevant for purposes of supplemental jurisdiction. The issue is whether the counterclaims and the claims, not the potential affirmative defenses to those claims, are so related as to form the same case or controversy.").

Taken together, the Court finds that Plaintiff's negligence claim is not "so related" to his federal claims that they form the same "case or controversy" or involve a "common nucleus of operative fact." *See Weaver*, 939 F.3d at 624. Because the Court lacks supplemental jurisdiction over Plaintiff's negligence claim, it should be dismissed without prejudice for lack of subject matter jurisdiction.[7]

---

[7] Plaintiff does not invoke diversity jurisdiction or allege facts sufficient for the Court to do so. *See* Dkt. 9 at 2–3, 14–15. However, the Court notes that Plaintiff is a citizen of Texas, Dkt. 9 at 2, and, based on public filings, Defendant appears to be a Texas corporation with its principal place of business in The Colony, Texas. Whether Defendant is a subsidiary is of no consequence for the purposes of diversity jurisdiction. *See Panalpina Welttransport GmBh v. Geosource, Inc.*, 764 F.2d 352, 354–55 (5th Cir. 1985).

### III.     RECOMMENDATION

For the foregoing reasons, the Court recommends that the Second Motion to Dismiss (Dkt. 19) be **GRANTED**, and Plaintiff's negligence claim be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. All of Plaintiff's federal claims remain pending.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 21st day of June, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE